(No. 78-CC-1418- )

Erik A. Borg Co., Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed January 7, 1982.*

Allen E. Hoban, for Claimant.

Tyrone C. Fahner, Attorney General (Glen P. Larner, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Erik A. Borg Company, a corporation, filed its complaint on September 18, 1978, for items of costs incurred by Claimant and alleged by it to be compensable as part of agreed extras.

This matter was referred to commissioner Martin C. Ashman for a hearing. By agreement of the parties the hearing was waived.

The facts are undisputed and were received by way of a joint stipulation filed April 17, 1981. Claimant entered into a contract with the Illinois Building Authority and the University of Illinois on September 26, 1968, wherein the Claimant agreed to construct, as a general contractor, a building known as the medical research laboratory addition of the University Medical Center in Chicago for the sum of $2,946,800.00.

On January 20, 1969, after work had commenced, there was discovered unanticipated subsoil conditions

requiring extra work concerning installation of caissons. The extra work was agreed to be done on the basis of actual cost plus a fee, which extra work was authorized by Respondent, which raised the cost of the caisson part of the job from $34,000 anticipated in the contract to $481,651.99.

The extra work resulted in three claims made by Claimant, which will be discussed individually.

Count I—Claim for foreman's wages

Prior to the discovery of the unusual subsurface soil conditions, Claimant had hired a subcontractor to do the caisson work. Claimant's general superintendent, David Walter, was to have general supervision of the caisson work as well as the balance of the work. When the subsurface soil conditions were discovered, Claimant took over the caisson work and assigned David Walter as the foreman on the job during the day and assigned George Floberg as foreman for the night shift. The cost of Floberg's salary has been paid by Respondent. The cost of Walter's salary—$14,566.00—has not been paid by Respondent on the grounds that Walter was being paid as a general superintendent which was overhead expense not covered as an increased cost.

Section 1—17 of the contract, entitled "changes in work" provided, among others, that payment for the extra work would include "the actual cost of labor, including foremen". The contract also provides that Claimmant was to receive as compensation a fixed percentage fee "to cover the cost of supervision".

There is no evidence that Respondent knew, during the construction, that Walter was designated as a foreman although Respondent knew that Walter was on the job every day doing foreman-type duties. Walter was paid

out of the general corporate fund of Claimant indicating Claimant's belief, at the time, that Walter's salary constituted general overhead and supervision. Furthermore, the change orders submitted by Claimant and agreed to by Respondent did not claim Walter's salary as an item of cost. Claimant first raised the issue of Walter's salary about 2½ years after the agreed change orders. Claimant insists that Walter's position on the general corporate payroll and its failure to request his salary as an item of cost was an oversight.

It is the opinion of this Court that Walter's salary is an item of cost to be paid by Respondent. The necessity of a foreman and more than one foreman was contemplated by the parties in the contract. The necessity for payment for foremen was evidenced by the fact that Respondent agreed to and did pay for one foreman. Walter's work as a foreman was known by Respondent by their day to day observation of him (although they may have regarded him as a general superintendent). The architect attested to the fact that Mr. Walter spent most of his time on the job together with Borg's regular superintendent. It is clear to the Court that had Claimant assigned a different person as foreman, Claimant would not have been refused that item of cost. Merely because Claimant assigned one as foreman who had previously been general superintendent should not be the basis for refusal of an actual item of cost for Claimant. Claimant's oversight in not properly listing Walter originally is understandable in view of the sudden nature and large nature of the additional work.

The Court does not agree with Respondent's contention that Walter's salary was a separate extra item which necessitated advance knowledge and agreement. An extra is an item of construction and all such extras

were, in fact, agreed to in advance on a cost plus basis. The salary of an individual is not a separate extra but is merely an item of cost of an extra and, therefore, did not require specific agreement.

Therefore, the Court makes an award of $14,566.00 as to this claim.

Count II—Claim for an increase in contractors' fees.

The stipulation of the parties indicates that the contract provided that for unforeseen extras, Claimant would receive a 15% fee for costs for its own forces and a 5% fee for subcontractors' work. These fees were for the purpose of paying Claimant's overhead, supervision and profit. Each of eight change orders submitted by Claimant and accepted by Respondent showed that Claimant was to be paid a 15% fee for work done by its own forces and a 5% fee for work done by its subcontractors.

Claimant submitted a claim for an additional 5% fee on subcontractor work based on the following in the contract:

"To the cost under (c) there shall be added a fixed fee *agreed upon* not to exceed 15% of the actual cost of the work." (Emphasis added.)

Claimant contends that the unforeseen caisson work was unusually difficult requiring intense planning and that, therefore, a fee of more than the agreed upon 5% would be appropriate and claims that the change orders signed by Claimant, claiming only 5%, were the result of confusion or oversight.

The Court does not agree with Claimant's contention. The parties stipulated that the contract contained a provision for a 5% fee in the case of changes in work not covered by unit prices. This was the agreement contemplated by the words "agreed upon" in the portion of the contract relied upon by Claimant. The change orders,

signed by Claimant, evidenced the agreement that the fee was 5%. The first claim made for an increase in fee was made long after the work was completed. Moreover, joint exhibit No. 26 indicates that the claim for an additional fee was made to cover the costs of David Walter's salary, with the implication that Claimant did not expect to receive both Walter's salary and an increased fee. Having awarded Walter's salary, it would be inappropriate to award any increased fees.

Moreover, neither this Court nor any other court is empowered to rewrite the contract of the parties. Having agreed to a 5% fee, Claimant is thereby limited to 5%, and the request for an increase is denied.

The Court having allowed the claim for Walter's salary, a sum of $2,184.00 is awarded to Claimant since that was the agreed fee of 15% as contractor's fee for Walter's salary.

Count III—Claim for interest paid on funds borrowed by Claimant.

During the course of construction, Respondent was late in making agreed-upon progress payments to Claimant, resulting in the necessity of Claimant to borrow money to pay subcontractors, at an interest cost of $3,724.77. Claimant claims these as additional costs compensable by Respondent.

Payment of interest as an out-of-pocket cost is no different than paying interest on an award. This Court has long held the State is not liable for the payment of interest on the amount of an award in that the same is a penalty.

In this case, the contract does not provide for any interest for late payments. Claimant has cited no cases

wherein the cost of loans required due to late payments is chargeable against the State. If Claimant had had sufficient capital, it would not have needed to borrow. If this claim was granted, the State would be in a position of paying interest costs for those contractors who have insufficient capital and not pay those contractors whose capital investment is sufficient. In reality, the cost of borrowing is immaterial. The cost of money is a cost that every contractor bears, whether or not he borrows money. This is a cost that every person who is entitled to the payment of a claim and who is subsequently awarded a claim by this Court has had to bear. And this Court has never awarded to a successful Claimant an award for the cost of money.

Therefore, the cost of borrowing money is not properly a cost of construction which is compensable and therefore, this claim will be denied.

It is the opinion of the Court that Claimant be awarded $14,566.00 for a foreman's salary plus $2,184.00 as contractor's fee.

An award, therefore, is made to Claimant in the amount of $16,750.00.